OPINION
{¶ 1} Defendant-appellant, Brian L. Harris, appeals his conviction in the Franklin County Court of Common Pleas on charges of carrying a concealed weapon ("CCW"), and of aggravated robbery, kidnapping and abduction, all with specifications. In August 2002, the trial court sentenced appellant as follows:
 {¶ 2} "The Court hereby imposes the following sentence: 6 months for Count One [CCW], 6 years for Count 3 [Aggravated Robbery] with an additional 3 consecutive years of actual incarceration for the gun specification in Count 3, Four years for Count Six [Kidnapping with Specification], Four years for Count Eight [Kidnapping with Specification], 3 years for Count Seven [Abduction with Specification] and 3 years for Count Nine [Kidnapping with Specification] * * *. Counts One, Three, Six, Seven, Eight, and Nine shall run concurrent with each other. The gun specification in Count 3 shall run consecutive to Count 3."
 {¶ 3} Appellant's conviction arises out of events which occurred on January 3, 2002. Appellant's girlfriend had broken up with him the day before and had thrown him out of the home that they shared, leaving him homeless. At loose ends, the next day appellant met up with his friend Jason Davenport and got a ride to the Davenport home. Already there were Jason's younger brother Brian, and Brian's two friends, Ryan Folk and Brandon Anderson, all of whom were high school students. When Anderson, Folk, and Brian Davenport prepared to leave, appellant asked for a ride.
 {¶ 4} Although Anderson had never met appellant before, he agreed to give him a ride, and he and Folk sat in the passenger seat, with Brian Davenport in the back with appellant. According to testimony from Folk, Anderson and Brian Davenport, appellant asked to be taken to a Burger King restaurant where a friend would be meeting him; however, upon arriving in the parking lot, the group waited some 30 minutes without anyone showing up. Eventually, Anderson said he needed to get home for dinner and attempted to drive out of the lot with appellant still in the car. At this point, the testimony of the other three indicates that appellant pulled out a gun and said "this is a stick up." While shouting threats and obscenities at the other occupants of the car, appellant hit Anderson on the side of his head with the gun, causing a tear in his earlobe requiring stitches. He also used the gun to strike Folk in the head. Appellant then took money, a pager, a cell phone, and some music CDs from Folk, and told Anderson to drive them to a residential area across the street from the Burger King. After appellant exited the car, the boys drove to Folk's house and called police.
 {¶ 5} At trial, appellant testified in his own defense that, on the night in question, he had asked for a ride to his friend Pat Cochran's house and that the boys had given him a ride there, dropped him off, and that was the extent of his contact with them. He stated that he was never near the Burger King that night.
 {¶ 6} Based upon these facts, appellant was indicted on two counts of CCW, and indicted on one count of aggravated robbery, two counts of robbery, three counts of kidnapping, three counts of abduction and one count of felonious assault, all with specifications. Later dismissed were the two counts of robbery and the one count of felonious assault. The jury then found appellant guilty of a misdemeanor on the CCW count, which, later, was incorrectly referred to in the judgment entry as a fourth degree felony. The jury also returned a verdict of guilty on the aggravated robbery count, and on the kidnapping and abduction counts.
 {¶ 7} Appellant now assigns the following as error:
 {¶ 8} "Assignment of Error I
 {¶ 9} "Appellant's convictions were based on insufficient evidence and were against the manifest weight of the evidence, thereby violating Appellant's due process rights, under Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.
 {¶ 10} "Assignment of Error II
 {¶ 11} "Appellant's due process rights under the state and federal constitutions were violated by the trial court's ruling that the convictions for kidnapping and abduction did not merge, when the elements of both alleged offenses, as testified to a [sic] trial, corresponded and were [sic] there was no evidence that the alleged offenses of conviction were committed separately or with a separate animus.
 {¶ 12} "Assignment of Error III
 {¶ 13} "The trial court commits reversible error by stating in its judgment entry that Appellant was convicted of carrying a concealed weapon as a felony of the fourth degree, when Appellant was actually convicted of a misdemeanor carrying a concealed weapon, and for stating that the imposition of a prison sentence is mandatory for the offenses of aggravated robbery, kidnapping and abduction and then imposing a prison sentence based thereon."
 {¶ 14} Appellant's first assignment of error argues that the evidence adduced at trial was not sufficient to support his conviction for CCW, and that the weight of the evidence did not inevitably lead to a finding of guilt. According to appellant, none of the three boys in the car with appellant testified that he remembered appellant carrying anything when he entered the car, and all three stated that they did not know where the gun came from. Appellant also argues that the three boys' descriptions of the gun did not match, and that their testimony was sketchy and lacked enough crucial details to render suspect their version of events.
 {¶ 15} The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 {¶ 16} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *"
 {¶ 17} See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80.
 {¶ 18} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
 {¶ 19} Considering the elements of the crimes of which appellant was convicted in light of the facts presented at trial, we find that such evidence, if believed, would convince a jury of appellant's guilt beyond a reasonable doubt. Describing the gun, Folk testified that the gun was "brass, kind of copper colored[,]" and that it "looked kind of old." (Tr. at 45.) Brian Davenport testified that the gun was "silver with ivory handle, I guess. I don't know." (Tr. at 92.) Anderson testified the gun was "an older revolver, had a long barrel, probably like a .22, low caliber." (Tr. at 121.) Although these descriptions do not match exactly, it is important to note that all three witnesses agreed that appellant had a gun, and that the gun was used to strike both Anderson and Folk. In addition, Anderson and Folk, being in the front seat, had to turn their heads to get a good look at the gun and their testimony was that, when they did so, appellant struck them with the gun. Thus, it is questionable whether they were able to get a good enough look at the gun to allow them to identify it with any accuracy. Finally, appellant's threatening conduct, combined with the youth of the witnesses, made it likely, even probable, that the witnesses were too frightened to remember exact details of the events which occurred in the car that night. Nevertheless, among the three, there does not appear to be any question that appellant had a gun on his person and used it in the furtherance of the robbery, kidnapping and abduction. Finding that his conviction was well-supported, we overrule appellant's first assignment of error.
 {¶ 20} In his second assignment of error, appellant claims that the charges of kidnapping and abduction should have been merged because there was no separate animus in their commission. The state counters that kidnapping and abduction are not allied offenses of similar import because it is possible to commit kidnapping entirely by means of deception without committing abduction.
 {¶ 21} The elements of the offense of kidnapping are set forth in R.C. 2905.01, which provides, in part:
 {¶ 22} "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * *:
 {¶ 23} "* * *
 {¶ 24} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 25} "* * *
 {¶ 26} "(B) No person, by force, threat, or deception, * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 27} "* * *
 {¶ 28} "(2) Restrain another of his liberty[.]"
 {¶ 29} Abduction is proscribed pursuant to R.C. 2905.02, which provides, in part:
 {¶ 30} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 31} "* * *
 {¶ 32} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]"
 {¶ 33} In State v. Rance (1999), 85 Ohio St.3d 632, 638, the court stated, "the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." (Emphasis sic.) The court further directed that "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" Rance, at 638-639. Addressing the question of whether abduction is a lesser-included offense of kidnapping, several Ohio appellate districts have concluded that "kidnapping, as statutorily defined, may be committed entirely by means of deception whereas abduction cannot." As a result, "one cannot say that kidnapping can never be committed without also committing abduction." State v. Williams (Dec. 27, 2000), Summit App. No. 19559. Thus, other districts have explicitly held that abduction is not a lesser-included offense of kidnapping. See, e.g., Williams, supra; State v. Klages (Mar. 17, 2000), Fairfield App. No. 99CA34.
 {¶ 34} Although cases from this court have stated that abduction is a lesser-included offense of kidnapping, these cases were decided without the analysis in the abstract mandated by Rance and are inapposite. See, e.g., State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 46, citing State v. Kroesen (Nov. 16, 2000), Franklin App. No. 00AP-48, and State v. Joyner (Mar. 23, 1999), Franklin App. No. 98AP-785. Thus, in the case at bar, application of the analysis required by Rance demonstrates that abduction is not a lesser-included offense of kidnapping because kidnapping, unlike abduction, may be committed entirely by use of deception. As a result, the state was not required to prove appellant committed kidnapping and abduction separately or with a separate animus. We therefore overrule appellant's second assignment of error.
 {¶ 35} Appellant's third assignment of error charges that the trial court erred in stating in its judgment entry that appellant was convicted of CCW as a fourth degree felony when the jury actually convicted him of CCW as a misdemeanor. The state concedes that this was erroneous, but claims the court understood the jury's conviction, and that the six-month sentence for CCW was appropriate for a first degree misdemeanor conviction.
 {¶ 36} This appears to be an oversight on the part of the trial court, and we agree with both parties that the court's judgment entry should be corrected to reflect that both appellant's conviction and sentence were for CCW as a first degree misdemeanor. Therefore, we sustain appellant's third assignment of error.
 {¶ 37} For the foregoing reasons, appellant's first and second assignments of error are overruled, and appellant's third assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court with instructions to enter a new judgment entry reflecting that appellant was convicted of a first degree misdemeanor CCW charge and sentenced accordingly.
Judgment affirmed in part, reversed in part, and remanded with instructions.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution